FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUL 12 PM 2: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

DEBORAH A. ROMAN, }
}
    Plaintiff, }
}                    CIVIL ACTION NO.
v. }
}                    98-AR-2281-S
MINNESOTA MINING AND }
MANUFACTURING COMPANY, }           **ENTERED**
}
    Defendant. }                   JUL 1 2 1999

### MEMORANDUM OPINION

Presently before the court is a motion for summary judgment
filed by defendant, Minnesota Mining and Manufacturing Company
("3M"). The motion seeks judgment as a matter of law on all claims
asserted against 3M by plaintiff, Deborah A. Roman ("Roman").[1]
Specifically, 3M seeks summary judgment on Roman's claims of breach
of contract and fraudulent misrepresentation. For the reasons
hereinafter stated, the motion is due to be granted.

#### Background

3M is a Delaware corporation with its principal place of
business in the state of Minnesota. 3M is engaged in the
manufacture, sale, and distribution of pharmaceutical drugs. 3M
employs sales representatives to distribute and sell sample drugs
to various physicians, practitioners, hospitals, and other

---

[1] Plaintiff, Deborah A. Roman is now Deborah A. Gregory. Plaintiff will
be referred to as "Roman" throughout this opinion.



institutions.

Deborah Roman resides in Jefferson County, Alabama.  In the fall of 1996, 3M acquired Curatek, Roman's then employer, and Roman became an employee of 3M.  Roman worked as a pharmaceutical sales representative for 3M's Women's Health Group ("Women's Health") through November 30, 1996.  Effective December 1, 1997, Roman transferred from Women's Health to the position of Institutional Sales representative.

In 1996 and 1997, 3M had in place a "Top Producers Club" program to recognize and reward its top sales persons for their efforts during the Top Producer Club year ("TP year").  The TP year ran from December 1 through November 30 of the following calendar year.  Sales persons with a high volume of sales in the TP year were eligible for the rewards conferred by the Top Producers Club so long as they worked the same territory for the TP year, were not on a "performance correction" during the TP year, and had received a minimum rating of "Good" on their most recent performance appraisal.

In October of 1996, Roman became aware that 3M planned to award Top Producer Club trips to Hawaii as a reward to the top performers of the TP year that ran from December 1, 1996 through November 30, 1997.  The trips were scheduled to take place in March of 1998.  In mid-January of 1998, Roman learned that her sales volume from December 1, 1996 through November 30, 1997 had earned

2

her a spot on the Top Producers Club trip.  Roman was issued plane tickets and an informational packet and was told that she could invite a companion.  Her name was listed with other representatives who had received the award.  The trip was scheduled to take place March 13 through 19, 1998.

Roman did not, in fact, attend the Top Producers Club trip to Hawaii.  In March of 1998, 3M cancelled Roman's plane reservations and other travel accommodations.  Roman contends that the cancellation of her trip breached a contract allegedly established by the combination of the Top Producer Club informational handout and Roman's job performance in the relevant TP year.  Roman filed an action in the Circuit Court of Jefferson County, seeking damages in excess of $ 75,000 for 3M's alleged breach of contract and for fraudulent misrepresentation.  3M removed the action to this court based on this court's diversity jurisdiction.

## Discussion

### Breach of Contract

Roman contends that the handout containing information on 3M's Top Producer Club constituted an offer to form a binding contract obligating 3M to send top salespersons on an all expense paid trip to Hawaii. Roman argues that she accepted the offer by agreeing to "do a good job for 3M in sales of pharmaceuticals during the year December  1,  1996  through  November  30,  1997,  meeting  all

3

qualifications as set out in the Top Producers documentary material." *Pl.'s Br. in Opp.*, at 4. According to Roman, notification that she had been awarded the trip, receipt of informational materials regarding the trip, the issuance of plane tickets, and the posting of her name among other employees scheduled to attend the trip also show the existence of an offer to form a unilateral binding contract.

3M first attacks Roman's claim for breach of contract by arguing that the company communication on which her claim largely relies is not a "handbook." This is irrelevant, however, as the Alabama Supreme Court has recognized that documents other than an employee handbook can provide the basis for a contract claim. *See Paseur v. City of Huntsville,* 642 So.2d 969, 971 (Ala. 1994) (posting of employment vacancies); *Evans v. National Microsystems, Inc.*, 576 So.2d 207 (Ala. 1991) (company-wide memorandum).

3M next denies that dissemination of the Hawaii Top Producer Club informational handout was an offer to enter into a binding contract. 3M disputes that Roman agreed "to do a good job for 3M in sales" in exchange for a trip to Hawaii, noting that Roman herself testified that she did not change her job performance in reliance on any promise by 3M to send top salespersons on a trip, she just continued to work at the same pace as she had prior to the dissemination of the Top Producer Club materials. 3M also denies that an offer to contract was made by the notification to Roman

4

that she had been selected to attend the trip, the request for information about her travel companion, and the issuance of plane tickets to Roman.

Assuming, *arguendo*, that its actions did constitute an offer, 3M next contends that Roman did not accept the offer, nor did she provide consideration for the contract since her job performance was unsatisfactory. According to 3M, Roman was ineligible to receive the trip award from the Top Producer Club because she had been placed on "performance correction" due to her non-compliance with the requirements of the Prescription Drug Marketing Act of 1987 ("the PDMA" or "the Act")[2] and 3M's own PDMA compliance policy.[3]

There are two questions, which, when answered, will be dispostive. First, did 3M make an offer to form a unilateral

---

[2] The PDMA governs the receipt, storage, and distribution of samples produced by pharmaceutical companies like 3M. The Act's dual purposes are to prevent illegal drug trade and to provide a means of recalling distributed samples if a problem with the drug should later arise. To this end, the PDMA contains various tracking procedures. These procedures create a paper and electronic audit trail that follows a sample from manufacture through distribution. The Act subjects both pharmaceutical companies and individual pharmaceutical sales representatives to criminal and civil penalties for non-compliance.

[3] 3M argues that Roman was aware of the PDMA's requirements since compliance with the Act was required in her previous position. Roman was also reminded of her obligations under the PDMA via 3M's own training on the Act's requirements. 3M has also established its own PDMA compliance policy, which is communicated to all employees in a booklet entitled "The Prescription Drug Marketing Act: Its Effect on You." The booklet sets out 3M's procedures for PDMA compliance, as well as several administrative requirements such as submission of expense reports, vacation time and personal days. The booklet also contains a warning that any deviation from 3M's compliance policy could result in disciplinary action, including termination.

5

contract to send Roman on an all expense paid trip to Hawaii? Second, if such an offer was made, did Roman accept the offer and provide the consideration necessary to make the contract enforceable (i.e., did she provide satisfactory job performance for the relevant TP year?)?

The first question is to be examined in light of the standards set out in *Hoffman-LaRoche, Inc. v. Campbell*, 512 So.2d 725 (Ala. 1987). In *Hoffman-LaRoche,* the Alabama Supreme Court set out the circumstances under which employer disseminated information can constitute an offer to form a binding unilateral contract. First, the language contained in the employer disseminated information must be specific enough to constitute an offer. *See id.* at 735. Whether the language is sufficiently clear and specific to constitute an offer of a unilateral contract is a question of law to be determined by the court. *Dykes v. Lane Trucking*, 652 So.2d 248, 250 (Ala. 1994). Second, the offer must have been communicated to the employee. *Id.* Third, the employee must have accepted the offer by retaining employment after he or she became aware of the offer. The employee's actual performance provides the necessary consideration. *Id.*

Though Roman relies on both the Top Performers Club handout and the circumstances surrounding her subsequent selection to attend the trip as evidence supporting the an offer to form a binding unilateral contract, only the handout can properly be

6

considered.  All other events on which Roman relies - notification
that she had been awarded a trip, receipt of information regarding
the trip, receipt of plane tickets, and the listing of her name
along with other employee award recipients - occurred in 1998.  The
very nature of the alleged contract required Roman to accept 3M's
alleged offer and provide consideration for the bargain via job
performance from December 1, 1996 through November 30, 1997.
Roman's contention that the 1998 events support the conclusion that
3M made an offer is tantamount to suggesting that an offer can be
accepted before it is communicated.  It is axiomatic that an offer
must be communicated before it can be accepted.  *Hoffman-LaRoche,*
512 So.2d at 734.

    With the evidence in support of an offer thus properly defined
as the informational handout outlining the Top Producers Club
program, it is apparent that 3M made no offer to form a unilateral
contract immediately obligating it to send Roman to Hawaii.  Like
the document at issue in *Paseur v. City of Huntsville*, the Top
Producers Club handout was designed to be an informational tool.
*See* 642 So.2d at 972.   The document was merely intended to
advertise sales incentives and to give notice of the requirements
that sales persons must satisfy in order to be considered for the
incentive awards.

    Moreover, the language used in the handout is indefinite, not
specific, with regard to planned awards.  On page one, the handout

7

states:

> The schedule *currently* *calls* *for* a trip in March.  Hawaii is the *planned*
> *location*.  Input on *possible* *locations* will be discussed . . .

(emphasis supplied).

This language indicates that the awards to be given to Top Producer

Club winners were still a matter for debate.  The "offer" was not

final and unequivocal.  The open-ended language with regard to the

"planned location" or "possible location" precludes a finding that

3M was offering to enter a binding unilateral contract to send

award recipients to Hawaii.  The evidence indicates that, at the

time the information was disseminated, plans were unfixed and

uncertain.  An offer to contract cannot be based on language so

indefinite.

Having concluded that 3M did not make an offer to enter into

a binding contract, there is no need for this court to decide

whether Roman accepted the alleged offer and provided consideration

by adequate job performance.  The court does note, however, that 3M

spends much of its brief cataloging the various ways in which Roman

failed to comply with 3M's PDMA policy while she was employed as an

Institutional  Sales  representative.    Roman  worked  as  an

Institutional Sales representative from December 1, 1997 until her

resignation in April of 1998.  Top Producer Club trips were awarded

for sales performance in the TP year that runs from December 1,

1996 through November 30, 1997.  Consequently, though placement on

performance  correction  due  to  Roman's  non-compliance  as  an

8

Institutional Sales representative might disqualify Roman for the trip for TP year December 1, 1997 through November 30, 1998, it should have little effect on the decision to send her to Hawaii for performance in the previous TP year.

## Fraudulent Misrepresentation

Roman's deposition testimony makes clear that she bases her fraudulent misrepresentation claim only on statements made to her during a conversation with Kathy Bell from 3M's Human Resourses Department. To survive 3M's motion for summary judgment, Roman must present evidence that 3M made a false statement involving a material existing fact, that the statement was made willfully to deceive or recklessly without knowledge, that Roman reasonably relied to her detriment on the false statement, and that the statement proximately caused her injury or damage. *See Goodyear Tire and Rubber Co. v. Washington,* 719 So.2d 774, 776 (Ala. 1998); *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 421 (Ala. 1997); *Pate v. Rollison Logging Equip., Inc.,* 628 SO.2d 337, 341 (1993). While the court notes that a plaintiff's failure to produce evidence of any one of these necessary elements entitles a defendant to judgment as a matter of law, in this case Roman fails to present evidence on *any* of the elements required to sustain her claim.

First, Roman has presented no evidence that a false statement was made. According to Roman, Bell promised that Roman would be

9

able to attend the Top Producers trip if Roman could provide certain requested information to Bell within 24 hours. Roman herself testified that she did not provide the requested information within the designated time. Because Roman did not fulfill the obligation placed upon her, she can only speculate as to the veracity of Bell's representation. Speculation is not evidence.

Second, Roman presents no evidence that at the time Bell stated that Roman could still attend the trip, 3M or Bell intended to deceive Roman or recklessly disregarded the truth of the statement. The mere fact that Roman did not attend the trip is insufficient to support an inference that 3M acted to intentionally deceive. *Goodyear*, 719 So.2d at 776.

Third, Roman presents no evidence that she relied – reasonably or unreasonably – on Bell's statement. Roman did not assemble the information requested and provide it overnight to Bell, only to learn that she would not attend the trip. Instead, Roman called the airline on which she was scheduled to travel and the hotel where she had planned to stay. Upon learning that her arrangements had been cancelled, Roman chose not to comply with Bell's request for information. Roman presents nothing to suggest that she took any action in reliance on Bell's statement – preventing her from establishing the elements of reliance, injury, and proximate cause.

10

## Conclusion

The court concludes that 3M is entitled to judgment as a matter of law on all claims asserted against it.  With regard to Roman's claim for breach of contract, the informational handout disseminated by 3M does not constitute an offer to form a binding unilateral contract.  Having concluded that no offer existed, the court needs not determine whether Roman's performance during the TP year running from December 1, 1996 through November 30, 1997 was sufficient to constitute acceptance of the offer and consideration for the bargain.   With regard to the claim for fraudulent misrepresentation, Roman has presented absolutely no evidence establishing the requisite elements.

An appropriate order granting 3M's motion for summary judgment and dismissing the action will be separately entered.

DONE this /2 day of July, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

11